

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RICHARD TARGETT-ADAMS,<br><br>Defendant | Criminal No. 19cr10046<br><br>Violations:<br><br>Count One: Conspiracy to Commit Securities Fraud and Money Laundering<br>(18 U.S.C. § 371)<br><br>Count Two: Securities Fraud; Aiding and Abetting<br>(15 U.S.C. §§ 78j(b) and 78ff(a); 17 C.F.R. § 240.10b-5; 18 U.S.C. § 2)<br><br>Forfeiture Allegation:<br>(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)) |

INFORMATION

At all times relevant to this Information:

General Allegations

Key Individuals and Entities

1. The defendant, RICHARD TARGETT-ADAMS ("TARGETT-ADAMS") was a resident of France.

2. Roger Knox ("Knox"), was a resident of France who worked with TARGETT-ADAMS.

3. Morrie Tobin ("Tobin") was a resident of Los Angeles, California who invested in publicly traded companies and engaged in pump-and-dump schemes, as well as other forms of market manipulation.

4. Milan Patel ("Patel"), an attorney, was a resident of New Jersey and Florida, and of Zurich, Switzerland.

5. Matthew Ledvina, an attorney, was a resident of Zurich, Switzerland.

6. Silverton SA, also known as Wintercap SA (collectively, "Silverton"), was a purported asset management firm located in Switzerland that was owned by Knox and operated by Knox with the assistance of TARGETT-ADAMS.

7. Brokerage 1 was a brokerage firm located in Malta.

8. Brokerage 2 was a brokerage firm located in the United Kingdom.

9. Brokerage 3 was a brokerage firm located in the United States.

10. Co-Conspirator 1 ("CC-1") was a resident of Switzerland who operated a money transfer business that helped Knox and TARGETT-ADAMS remit securities frauds proceeds to Silverton's clients.

11. Environmental Packaging Technologies Holdings, Inc. was a Nevada corporation that began trading on the over-the-counter ("OTC") securities market in or about June 2017 under the ticker symbol EPTI.

12. Cure Pharmaceuticals was a Nevada corporation that began trading on the OTC securities market in or about November 2016 under the ticker symbol CURR.

13. EPTI and CURR were controlled by Tobin, together with others (collectively, the "Tobin Control Group").

14. The Securities and Exchange Commission ("SEC") is an independent agency of the executive branch of the United States government. The SEC is responsible for enforcing the federal securities laws and promulgating rules and regulations thereunder. Among other things,

federal securities laws are designed to protect the investing public by maintaining fair and honest securities markets and eliminating manipulative and deceptive trading practices.

<u>Key Terms and General Background</u>

15. Shares, or "securities," of publicly traded companies (known as "issuers") that are acquired directly from the issuers, and are not registered with the SEC, generally cannot be sold to the public unless certain exceptions are met. Such shares are considered "restricted." Shares that are registered with the SEC, and that do not bear a legend indicating they are restricted, are considered "free-trading," and may be bought and sold in the public market.

16. "Penny" or "microcap" stocks are securities issued by small, publicly traded companies that typically trade at less than $5 per share, and often less than $1 per share. Penny stocks typically are not listed on organized securities exchanges such as the New York Stock Exchange or the NASDAQ Stock Market, but rather are traded on the OTC market. Such stocks are particularly susceptible to manipulative trading and other forms of fraud because, among other things, they are often thinly traded and their free-trading shares may be controlled by a single individual or group of individuals (often called a "control group") through third-party or "nominee" shareholders.

17. A reverse merger is a transaction in which a privately held company acquires a publicly traded company, and thereby itself becomes publicly traded without going through an initial public stock offering. Often, the publicly traded companies involved in reverse mergers are "shell" companies with few, if any, assets or operations.

18. A "pump-and-dump" scheme typically involves the artificial inflation of the stock price and/or trading volume of a publicly traded company (the "pump"), so that individuals who

control a substantial portion of the company's free-trading stock, can profit by secretly selling their shares to other investors (the "dump").

19. Generally, pump-and-dump schemes effect the artificial inflation of stock prices and trading volume through, among other things, the issuance of news releases and promotional materials—often containing false, misleading, or exaggerated claims about the companies' potential, or predicting unrealistic stock price targets—and through manipulative trading designed to generate the appearance of demand for the shares. Such schemes often rely on paid promotional campaigns to disseminate false and misleading information through emails, newsletters, hard mailers and social media outlets.

20. An "affiliate" of a publicly traded company is an entity or person—such as an executive, director or large shareholder—who, directly or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, the issuer. Entities or persons holding more than 10 percent of an issuer's stock are generally deemed to be affiliates. In the context of OTC securities, affiliates are not permitted to sell more than one percent of an issuer's total outstanding shares in any three-month period.

21. SEC regulations require certain public companies, and their investors, to disclose any ownership interests in excess of five percent of the companies' stock.

### The Conspiracy

22. In or about and between 2013 and October 2018, TARGETT-ADAMS conspired with Knox, Patel, Ledvina, Tobin and others known and unknown to the United States Attorney to (a) commit securities fraud by disguising the ownership and control of various microcap securities so that, among other things, the groups that controlled those stocks—including the Tobin Control Group—could profit by engaging in pump-and-dump schemes and other forms of

market manipulation; and (b) transfer the proceeds of the securities fraud to clients outside of the United States with the intent to promote such fraud.

### Objects and Purposes of the Conspiracy

23.     A principal object of the conspiracy was for TARGETT-ADAMS, Knox, and their co-conspirators to commit securities fraud by selling restricted securities in microcap companies in a more liquid market and/or at artificially inflated prices.

24.     Another object of the conspiracy was for TARGETT-ADAMS, Knox, and their co-conspirators to commit money laundering by transferring the proceeds of their securities fraud into and out of the United States in order to promote such fraud.

25.     Another object and purpose of the conspiracy was for TARGETT-ADAMS, Knox, and their co-conspirators to conceal their actions from regulators, law enforcement and investors.

### Manner and Means of the Conspiracy

26.     Among the manner and means by which TARGETT-ADAMS, Knox, and co-conspirators known and unknown to the United States Attorney carried out the conspiracy were the following:

   a. Distributing purported free-trading shares of various microcap companies among several nominee shareholders to disguise the fact that the shares were controlled by a single control person or control group;

   b. Transferring the shares from the nominee entities to Silverton, and then to omnibus brokerage accounts in Silverton's name;

   c. Selling the shares from the Silverton omnibus accounts during promotional campaigns, without required disclosures and in violation of federal securities laws and regulations governing the sale of stock by affiliates and other investors; and

5

      d. Remitting the proceeds from the stock sales to the control person or control group and their associates through wire transfers into and out of the United States.

### Overt Acts

27. On or about various dates between 2013 and October 2018, TARGETT-ADAMS, Knox, and their co-conspirators committed and caused to be committed the following overt acts, among others, in furtherance of the conspiracy:

    A. **The EPTI Pump-and-Dump**

28. In or around August 2013, the Tobin Control Group acquired the majority of the shares of a publicly traded company with minimal assets and operations (the "EPTI Public Shell").

29. Beginning in or about May 2015 and continuing through 2017, the Tobin Control Group distributed its purported free-trading shares in the EPTI Public Shell among four offshore entities that were created to hold the shares (collectively, the "EPTI Nominees"). The EPTI Nominees, in turn, were registered in the names of various third party purported "beneficial owners" with familial or personal connections to the Tobin Control Group.

30. In or about and between December 2016 and June 2017, Tobin, together with others, merged a privately held company, Environmental Packaging Technology, Inc., into the EPTI Public Shell. The reverse merger closed on or about June 9, 2017.

31. In or about April 2017, the Tobin Control Group caused the shares held in the names of the EPTI Nominees to be transferred to Silverton, the entity owned by Knox and operated by Knox and TARGETT-ADAMS. At the time of the transfer of shares, each of the EPTI Nominees held under five percent of the company's total outstanding shares.

32. In or about and between April and May 2017, TARGETT-ADAMS and Knox caused the shares to be deposited into Silverton's omnibus accounts at multiple brokerage firms. For example:

   a. On or about April 12, 2017, TARGETT-ADAMS and Knox caused Silverton to deposit approximately 2.7 million shares of the Tobin Control Group's shares with Brokerage 1;

   b. On or about April 27, 2017, TARGETT-ADAMS and Knox caused Silverton to deposit approximately 2.6 million shares of the Tobin Control Group's shares with Brokerage 2; and

   c. On or about May 3, 2017, TARGETT-ADAMS and Knox caused Silverton to deposit approximately 2.6 million shares of the Tobin Control Group's shares with Brokerage 3.

33. In or about and between April and May 2017—before the merger of the privately held company Environmental Packaging Technologies, Inc. into the EPTI Public Shell had closed—Tobin and others raised approximately $2.9 million in a private placement of shares of Environmental Packaging Technologies, Inc.

34. In or about and between May 20 and May 25, 2017, Tobin and others transferred approximately $1 million of the funds raised during the private placement to another offshore entity, Svarna Ltd., that was created by TARGETT-ADAMS and Knox.

35. Thereafter, TARGETT-ADAMS and Knox transferred $1 million from Svarna to a third-party stock promoter in the United States that the Tobin Control Group had hired to promote the shares of EPTI.

36. On or about June 12, 2017, the promoter began touting the shares of EPTI to U.S. investors, including investors in the District of Massachusetts, prompting a significant increase in the stock's price and average daily trading volume.

37. In or about and between June 9 and June 27, 2017—when the SEC halted trading in EPTI shares— TARGETT-ADAMS and Knox, acting at the direction of the Tobin Control Group, sold shares of EPTI from the Silverton omnibus accounts at Brokerages 1 and 3, generating proceeds of approximately $1.3 million.

B. The CURR Pump-and-Dump

38. In or about June 2016, the Tobin Control Group acquired substantially all of the stock of a publicly traded shell company (the "CURR Public Shell").

39. By September 2016, the Tobin Control Group transferred its shares in the CURR Public Shell to multiple offshore nominee entities (the "CURR Nominees"), each of which held under five percent of the company's total outstanding shares. Each of the CURR Nominees was registered in the name of a third-party purported beneficial owner with familial or personal connections to the Tobin Control Group.

40. Tobin, together with others, merged a privately held company, Cure Pharmaceutical Corporation, into the CURR Public Shell. The reverse merger closed on or about November 7, 2016.

41. Beginning in or about February 2017, the Tobin Control Group caused approximately three million free-trading shares of CURR held in the names of the CURR Nominees to be transferred to Silverton.

42. TARGETT-ADAMS and Knox caused the Tobin Control Group's shares to be deposited into omnibus accounts held by Silverton at multiple brokerage firms. For example:

    a. On or about March 3, 2017, TARGETT-ADAMS and Knox deposited approximately 1.1 million shares of the Tobin Control Group's shares into accounts at Brokerage 1;

    b. On or about March 3, 2017, TARGETT-ADAMS and Knox deposited approximately 982,202 shares of the Tobin Control Group's shares into accounts at Brokerage 3; and

    c. On or about March 16, 2017, TARGETT-ADAMS and Knox made an additional deposit of approximately 1 million shares of the Tobin Control Group's shares into accounts at Brokerage 1.

43. Beginning in or about late February 2017, Tobin caused others to engage in manipulative trading of CURR shares, and the company itself released eight successive press releases, prompting a significant increase in the average daily trading volume of CURR shares.

44. In or about and between March 10 and March 21, 2017, Knox, acting at the direction of the Tobin Control Group, sold approximately 147,647 CURR shares from the Silverton omnibus accounts, generating proceeds of approximately $1 million.

### C. The Proceeds of the EPTI, CURR and other Pump and Dump Schemes

45. On or about March 14, 2017, Knox directed Brokerage 1 to wire $699,980 from an account in Malta to a bank account in the name of Silverton in the United States that was controlled by CC-1 ("Silverton Account").

46. On or about March 17, 2017, Knox directed Brokerage 1 to wire $499,980 from an account in Malta to the Silverton Account in the United States.

47. On or about April 4, 2017, Knox directed Brokerage 1 to wire $599,980 from an account in Malta to the Silverton Account in the United States.

48. On or about March 31, 2017, CC-1 caused the transfer of $1,000,000 from the Silverton Account to a second bank account in the United States also controlled by CC-1 ("CC-1 Transfer Account").

49. That same day, CC-1, acting at the direction of Knox, wired $280,725.85 from the CC-1 Transfer Account to a bank account in Canada controlled by the Tobin Control Group.

50. On or about June 29, 2017, Knox directed Brokerage 3 to wire $955,000 to the Silverton Account.

51. On or about June 30, 2017, CC-1 caused the transfer of $900,000 from the Silverton Account to the CC-1 Transfer Account.

52. That same day, TARGETT-ADAMS, acting at the direction of Knox, wired $175,026.43 from the CC-1 Transfer Account to a bank account in Canada controlled by the Tobin Control Group.

53. On or about July 5, 2017, Knox directed Brokerage 1 to wire $807,980 from an account in Malta to the Silverton Account in the United States.

54. That same day, CC-1 caused the transfer of $800,000 from the Silverton Account to the CC-1 Transfer Account.

55. Thereafter, TARGETT-ADAMS, acting at the direction of Knox, directed CC-1 to wire $319,317.62 to a bank account in Canada controlled by the Tobin Control Group.

### D. The Replacement of the EPTI and CURR Nominees' Beneficial Owners

56. In or about September 2017, after the SEC halted trading in EPTI shares and began an investigation into suspicious trading in the stock, TARGETT-ADAMS and Knox met in Switzerland with Patel and Ledvina.

57.     At that meeting, Knox and Patel, together with other co-conspirators, decided to replace the beneficial owners of the EPTI and CURR Nominees with new beneficial owners who lacked personal or familial connections to the Tobin Control Group, in order to better conceal the existence and identity of the Tobin Control Group.

58.     In or about December 2017, Patel and Ledvina created alternate beneficial owner forms for the EPTI and CURR Nominees, which they backdated to make it appear as though the new beneficial owners had been in place prior to the initial transfer of EPTI and CURR shares to Silverton.

59.     Patel and Ledvina sent the backdated forms to TARGETT-ADAMS and Knox via text messages and thereafter by mail.

60.     TARGETT-ADAMS and Knox then replaced the beneficial owner forms in Silverton's files with the new, backdated forms, in order to ensure that the identities of the actual owners of the shares would be concealed from the SEC and other regulators or law enforcement authorities.

## COUNT ONE
Conspiracy to Commit Securities Fraud and Money Laundering
(18 U.S.C. § 371)

The United States Attorney charges:

61.     The United States Attorney re-alleges and incorporates by reference paragraphs 1-60 of this Information.

62.     In or about and between 2013 and October 2018, in the District of Massachusetts and elsewhere, the defendant,

### RICHARD TARGETT-ADAMS,

conspired with Roger Knox, Milan Patel, Matthew Ledvina, Morrie Tobin and others known and unknown to the United States Attorney to commit the following offenses against the United States:

   a. securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff(a), and Title 17, Code of Federal Regulations, Section 240.10b-5, to wit: knowingly and willfully, by the use of means and instrumentalities of interstate commerce, the mails, and the facilities of a national securities exchange, directly and indirectly to use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities, in contravention of Rule 10b-5 of the Rules and Regulations promulgated by the Securities and Exchange Commission, by: (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in light of circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which would and did operate as a fraud and deceit upon any person in connection with the purchase

and sale of securities, specifically, various microcap stocks including, but not limited to, shares of EPTI and CURR that traded on the OTC market; and

b. money laundering, in violation of Title 18, United States Code, Section 1956(a)(2)(A), that is, to transport, transmit, and transfer, and attempt to transport, transmit, and transfer a monetary instrument and funds from a place in the United States to and through a place outside the United States, specifically, Canada, and to a place in the United States from a place outside the United States, specifically Malta, with the intent to promote the carrying on of specified unlawful activity, that is, securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff(a), and Title 17, Code of Federal Regulations, Section 240.10b-5.

All in violation of Title 18, United States Code, Section 371.

<u>COUNT TWO</u>
Securities Fraud; Aiding and Abetting
(15 U.S.C. §§ 78j(b) & 78ff(a); 17 C.F.R. § 240.10b-5; 18 U.S.C. § 2)

The United States Attorney further alleges that:

63. The United States Attorney re-alleges and incorporates by reference paragraphs 1-60 of this Information.

64. In or about and between June 9, 2017 and June 27, 2017, in the District of Massachusetts and elsewhere, the defendant,

## RICHARD TARGETT-ADAMS,

did knowingly and willfully, by the use of the means and instrumentalities of interstate commerce, the mails, and the facilities of a national securities exchange, directly and indirectly use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities, in contravention of Rule 10b-5 of the Rules and Regulations promulgated by the Securities and Exchange Commission, and did (a) employ a device, scheme and artifice to defraud; (b) make untrue statements of material fact and omit to state material facts necessary in order to make the statements made, in light of circumstances under which they were made, not misleading; and (c) engage in acts, practices and courses of business which would and did operate as a fraud and deceit in connection with the purchase and sale of securities, specifically, shares of EPTI, a microcap stock traded on the OTC market.

All in violation of Title 15, United States Code, Sections 78j(b) and 78ff(a); Title 17, Code of Federal Regulations, Section 240.10b-5; and, Title 18, United States Code, Section 2.

## FORFEITURE ALLEGATION
### (18 U.S.C. § 981(a)(1) and 28 U.S.C. § 2461(c))

The United States Attorney further alleges that:

65. Upon conviction of the offenses in violation of Title 18, United States Code, Section 371 and Title 15, United States Code, Sections 78j(b) & 78ff(a), and Title 17, Code of Federal Regulations, Section 240.10b-5, as set forth in Counts One and Two of this Information, the defendant,

### RICHARD TARGETT-ADAMS,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses. The property to be forfeited includes, but is not limited to, the following:

    a. $160,000, to be entered in the form of a forfeiture money judgment; and,

    b. Defendant's interest, if any, in any and all trading proceeds for securities traded by Silverton/Wintercap.

66. If any of the property described in Paragraph 65 above, as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C) ), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant --

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 65 above.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

ANDREW E. LELLING<br>
UNITED STATES ATTORNEY

By: _____
ERIC S. ROSEN
ASSISTANT U.S. ATTORNEY

Date: February 6, 2019